KENT B. GOSS (State Bar No. 131499)
kgoss@orrick.com
CHRISTOPHER J. CHAUDOIR (State Bar No. 198444)
cchaudoir@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for Plaintiffs
THOUGHT CONVERGENCE, INC. and NAME
INTELLIGENCE, LLC

FILED
CLERK, U.S. DISTRICT COURT

MAY 27 2009
3:59

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOUGHT CONVERGENCE, INC., a Delaware Corporation and NAME INTELLIGENCE, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> JAY WESTERDAL, an individual; PER WESTERDAL, an individual; RAY BERO, an individual; CAMERON JONES, an individual; and NAME INTELLIGENCE, INC., a Washington corporation; DOTMOVIE, an unknown entity, <br><br> Defendants. | Case No. CV 03088-R (AJWx) <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> 1) **BREACH OF SECURITIES EXCHANGE AGREEMENT;** <br><br> 2) **BREACH OF EMPLOYMENT, NON-COMPETE AND INFORMATION AND INVENTION AGREEMENTS;** <br><br> 3) **FRAUDULENT INDUCEMENT:** <br><br> 4) **INTERFERENCE WITH CONTRACT;** <br><br> 5) **BREACH OF FIDUCIARY DUTY;** <br><br> 6) **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; AND** <br><br> 7) **ACCOUNTING** <br><br> **DEMAND FOR JURY TRIAL** |

1    Plaintiffs Thought Convergence, Inc. ("TCI") and Name Intelligence, LLC

2  ("NIL" and collectively with TCI, "Plaintiffs"), hereby demand a jury trial on their

3  Complaint and allege as follows:

## INTRODUCTION

5      1.    This case concerns a blatant breach of contract by the sellers of an

6  internet business to TCI, the breach of an employment agreement and noncompete

7  agreement by one of sellers' principals, Jay Westerdal, and Mr. Westerdal's breach

8  of fiduciary duties owed to Plaintiffs.  Despite Mr. Westerdal's assurances that his

9  business was set for immediate and explosive growth and that Mr. Westerdal would

10  commit his full business effort to running the business after its acquisition, neither

11  proved to be true.  Rather, Mr. Westerdal materially misrepresented and omitted

12  key information about the condition and nature of his business to extract a

13  hyperinflated purchase price.  Following the acquisition, Mr. Westerdal failed to

14  assist the business in any meaningful way, used company assets as his own personal

15  bank account and began developing a competing business in violation of his duties

16  and contractual obligations to Plaintiffs.  Plaintiffs have suffered untold damage by

17  virtue of these breaches, creating substantial offsets to the purchase price for the

18  business.  By this action, Plaintiffs are exercising their right to set-off the amounts

19  to which they are entitled by virtue the claims described herein against the First

20  and/or Second Post-Closing Payment due to Name Intelligence, Inc. ("NII"), if any.

## JURISDICTION AND VENUE

22      2.    Jurisdiction is based on 28 U.S.C. §1332(c) as Plaintiffs and

23  Defendants are citizens of different states and the amount in controversy exceeds

24  $75,000 exclusive of interest and costs.

25      3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(2) as a

26  substantial amount or part of the events or omissions giving rise to the claim

27  occurred in this district.  Venue is also proper in this Court pursuant to Section 7.11

28  of the Securities Exchange Agreement, which requires that any action arising out of

1    or relating to the agreement be brought in the State of California, County of Los

2    Angeles.

3                                          **PARTIES**

4          4.     Plaintiff TCI is, and at all times herein mentioned was, a corporation

5    duly organized pursuant to the laws of the state of Delaware, with its principal place

6    of business in Los Angeles, California.  TCI is an industry-leading provider of

7    domain management, monetization and development tools and technologies for

8    premium domain owners and aggregators of high quality domain portfolios.

9          5.     Plaintiff Name Intelligence, LLC ("NIL") is, and at relevant times

10   herein mentioned was, a limited liability company organized in the state of

11   Delaware with citizenship in California.

12         6.     On information and belief, Defendant Mr. Jay Westerdal ("J.

13   Westerdal") is an individual residing in Mercer Island, Washington.  J. Westerdal

14   was the co-founder, former CEO and President of NII, is the Chief Product Officer

15   of NIL and TCI and is a member of the TCI board of directors.

16         7.     On information and belief, Defendant Mr. Per Westerdal ("P.

17   Westerdal")  is an individual residing in Bellevue, Washington.

18         8.     On information and belief, Defendant Mr. Ray Bero ("R. Bero") is an

19   individual residing in Seattle, Washington.

20         9.     On information and belief, Defendant Mr. Cameron Jones ("C. Jones")

21   is an individual residing in Seattle, Washington.

22         10.    J. Westerdal, P. Westerdal, R. Bero and C. Jones were each controlling

23   shareholders of NII (the "Shareholders").

24         11.    On information and belief, Defendant NII is, and at all times herein

25   mentioned was, a corporation duly organized pursuant to the laws of the state of

26   Washington, with its principal place of business in Bellevue, Washington.

27         12.    On information and belief, Defendant DotMovie is a business entity

28   with a website located at www.dotmovieregistry.com ("DotMovie").  On

1    information and belief, DotMovie has its principle place of business in Mercer

2    Island, Washington and J. Westerdal is its CEO and founder.

3        13.    TCI is informed and believes, and on that basis alleges, that the

4    Defendants named herein are the partners, joint venturers, alter egos, agents,

5    principals, representatives, employees, servants, successors or predecessors of the

6    other Defendants, each and all of them, with respect to the matters alleged herein.

7    The Defendants named herein acted within the course and scope of their authority

8    as such partners, joint venturers, alter egos, agents, principals, representatives,

9    employees, servants, successors or predecessors, and with the consent, ratification

10    and approval of their co-Defendants in doing the things alleged herein.

11                          **THE TRANSACTION**

12        14.    In late 2007, representatives of TCI's predecessor in interest

13    approached J. Westerdal concerning the potential acquisition of NII's businesses,

14    Name Intelligence, LLC and Spry.Com, Inc. ("Spry" and together with NIL, the

15    "NIL Businesses").

16        15.    The NIL Businesses consisted of online tools for domain data

17    aggregation, analysis and management, and a virtual private server web hosting

18    services business.

19        16.    During the negotiations, J. Westerdal detailed how the NIL Businesses

20    would be complimentary to TCI's business operations and assured TCI that the NIL

21    Businesses would be immediately accretive to TCI's bottom line.  J. Westerdal also

22    promised that the NIL Businesses were growing year to year, and set for

23    "immediate and explosive growth."  Indeed, J. Westerdal assured TCI that the

24    second and third installment of the agreed upon purchase price (as described below)

25    would be "easily paid by the net profits" of the NIL Businesses as reflected in the

26    Financial Statements of the NIL Businesses.

27

28

17.    To coax TCI into the transaction, J. Westerdal also presented TCI with an Executive Summary of the NIL Businesses.  The Executive Summary detailed that revenue generated from a portion of the NIL Businesses totaled between $3 and $4 million dollars.  The Executive Summary further indicated that the businesses' Domain Roundtable Conferences would be held twice a year and that it would contribute significant additional revenue to the NIL Businesses.

18.    J. Westerdal further detailed that he had received another offer to purchase the NIL Businesses for a guaranteed sum of $60 million in cash and that he would proceed with that transaction unless TCI immediately agreed to purchase the NIL Businesses.

19.    Based on these representations, and others, TCI agreed to acquire the NIL Businesses for $16 million dollars and stock in TCI.

## THE TRANSACTION DOCUMENTS

20.    The transaction to acquire the NIL Businesses included several agreements, including, among others, the Securities Exchange Agreement dated May 2, 2008, by and among TCI, TrafficZ, Inc., NII, and each of the Shareholders (the "Securities Exchange Agreement")[1], Offer Letters dated May 28, 2009 between NIL and/or Spry.com, Inc. and the individual Shareholders (the "Offer Letters")[2], Restricted Stock Agreements dated May 2, 2008, by and among TCI and NII, J. Westerdal, P. Westerdal, R. Bero and C. Jones  (the "Restricted Stock Agreement")[3], Noncompetition Agreements dated May 2, 2008, by and between TCI and each individual Shareholder (the "Noncompetition Agreement")[4] and the Confidential Information and Invention Assignment Agreement ("Information and

---

[1] A true and correct copy of the Securities and Exchange Agreement is attached hereto as Exhibit A and incorporated herein by this reference.
[2] A true and correct copy of the Offer Letter between NIL and J. Westerdal is attached hereto as Exhibit B and incorporated herein by this reference.
[3] A true and correct copy of the Restricted Stock Agreement is attached hereto as Exhibit C.
[4] A true and correct copy of the Noncompetition Agreement between TCI and J. Westerdal is attached hereto as Exhibit D and incorporated herein by this reference.

- 4 -

1    Invention Agreement").[5] The foregoing agreements are collectively referred to
2    herein as the "Transaction Documents."[6]

3        21.   As part of the purchase of the NIL Businesses, Shareholders made
4    certain representations and warranties concerning the transaction. Among others,
5    Shareholders represented and warranted as follows:

> 3.6 <u>Financial Statements</u>. The Company has delivered to
> Parent the unaudited balance sheet, and the related unaudited
> statements of operations, changes in shareholders' equity and
> cash flows of the Company as of and for the twelve (12)
> months ended December 31, 2007 (the "<u>Financial
> Statements</u>"). The Financial Statements (a) are true, accurate
> and compete in all material respects, (b) are consistent with the
> books and records of the Company, (c) present fairly and
> accurately the financial condition of the Company in all
> material respects as of the date thereof and the results of
> operations, changes in shareholders' equity and cash flows of
> the Company for the periods covered thereby, and (d) have
> been prepared in accordance with GAAP, applied on a
> consistent basis through the periods covered.
>
>                         \*\*\*
>
> 3.13 <u>Intellectual Property</u>.
>
>     (g)   *No Violation; Restriction*.
>
>         (i)   … the operation of the Business as it is
> currently conducted, including, but not limited to, the design,
> development, use, import, branding, advertising, promotion,
> marketing, manufacture and sale of any of the Company's or
> any of its Subsidiaries' products (including any currently
> under development) or services, does not and will not, and will
> not when operated by Parent, any of its subsidiaries or NI LLC
> substantially in the same manner following the Closing,

---

[5] A true and correct copy of the Information and Invention Agreement is attached hereto as Exhibit E.
[6] Except were otherwise noted, capitalized terms shall have the same meaning specified in the Transaction Documents.

infringe or misappropriate any IP rights of any Person ... or constitute unfair competition or trade practices under the laws of any jurisdiction ...

\* \* \*

3.14 <u>Taxes</u>.

    (a)    All Tax Returns required to be filed by, or with respect to, the Company or any of its Subsidiaries on or prior to the Effective Date have been timely filed and all Taxes that are due and payable (whether or not shown on any Tax Return) have been timely paid or have been accrued for on the Financial Statements. Neither the Company nor any of its Subsidiaries is delinquent in the payment of assessment or governmental charge with respect to such Tax Returns. All federal, state, local and foreign income Tax Returns filed by, or with respect to, the Company or any of its Subsidiaries are true, correct and compete in all material respects....

\* \* \*

3.18 <u>Compliance with Laws</u>. The Company and its Subsidiaries are, and have been in compliance in all material respects with all Legal Requirements applicable to the Company or any of its Subsidiaries or their operations....

\* \* \*

3.24 <u>Full Disclosure</u>. None of the representations or warranties made by the Company herein or in the Disclosure Schedule, the other Transaction Documents or any certificate furnished by the Company pursuant to this Agreement, when all such documents are read together in their entirety, contains or will contain any untrue statement of material fact, or omits to state any material fact necessary in order to make the statements contained herein or therein, in light of the circumstances under which made, not misleading.

\* \* \*

3.28 <u>Shareholder Domain Names</u>.  Schedule 3.28 contains a true and complete list of each Domain Name registered in the name of any Shareholder (the "<u>Shareholder Domain Names</u>"). The Shareholder Domain Names have not been acquired using any of the assets of the Company

22.    Shareholders also covenanted to, among other things, the following:

5.1    <u>Expenses</u>.  Whether or not the Transaction is consummated, except as otherwise provided herein, all fees and expenses incurred in connection with the Transaction, including, but not limited to, all legal, accounting, financial, advisory, consulting and all other fees and expenses of third parties incurred by a party in connection with the negotiation and effectuation of the terms and conditions of such Transaction Documents and the Transaction, shall be the obligation of the respective party incurring such fees and expenses; provided, that Shareholders shall pay all fees and expenses of the Company or Shareholders incurred in connection or with, or otherwise arising as a result of, the Transaction Documents and the Transaction....

***

5.9    <u>Confidentiality and Assignment Agreements</u>. Shareholders shall take all commercially reasonable measures to obtain confidentiality and assignment agreements in the form acceptable to Parent from each of the current and former employees of the Company who prior to the Closing Date have not signed a form of such agreement...

***

5.10 <u>Third Party Consents</u>.  If any of the Required Contents as defined and set forth in Schedule 3.3 are not obtained and delivered by the Company or Shareholders immediately prior to or as of the Closing, but notwithstanding, the Transaction contemplated hereunder is consummated, following the Closing, Shareholders shall take all commercially reasonable measures to obtain such Required Consents from third parties...

23.    In addition to the representations, warranties and covenants, J. Westerdal also agreed to devote his full attention to the business operations after the acquisition and not to compete with TCI.

24.    Specifically, in the Offer Letter J. Westerdal agreed that:

> **Obligations to the Company**.  During your Employment, you shall devote your full business efforts and time to the Company. During your Employment, without prior written approval of the Company's Chief Executive Officer, you shall not render services in any capacity to any other person or entity and shall not act as a sole proprietor or partner of any other person or entity or own more than five percent of the stock of any other corporation.

25.    Likewise in the Noncompetition Agreement, J. Westerdal acknowledged and agreed that:

> C.  As a condition to its willingness to close the Exchange pursuant to the Exchange Agreement, Thought Convergence has required that Stockholder agree, and Stockholder has agreed, to the noncompetition and nonsolicitation covenants and the confidentiality agreements provided in this Agreement.

> D.  By his signature below, Stockholder acknowledges and agreed that (a) his execution and delivery of this Agreement is a material inducement for Thought Convergence to enter into the Exchange Agreement and consummate the transactions contemplated thereby and (b) he will receive material financial benefits and other goods and valuable consideration from the Exchange.

> \*\*\*

> 1.    <u>Noncompetition</u>.

> (b)    During the period which shall commence at the Closing (as defined in the Exchange Agreement) . . . Stockholder shall not (i) enter into, participate in, provide advisory services in connection with, or otherwise assist with or

be interested economically in the Restricted Business (as defined below) anywhere in the Business Area (as defined below), (ii) directly or indirectly (including without limitation, through any Affiliate (as defined below) of Stockholder, own, manage, operate, control or otherwise engage or participate in, or be connected as an owner, partner, principal, creditor, salesman, guarantor, advisor, member of the board of directors of, employee of or consultant in … (B) any entity or business, division, group, or other subset of any business, engaged (or to Stockholders' knowledge, planning to engage) in the Restricted Business in the Business Area or (iii) make preparations to provide assistance to any Restricted Business or to form a Restricted Business in the Business Area, including but not limited to any research or development efforts aimed at ultimately benefiting a Restricted Business.

26.    Finally, in the Information and Invention Agreement, J. Westerdal agreed that:

2.    **Duties**.  I will perform for the Company such duties as may be designated by the Company from time to time or that are otherwise within the scope of the Relationship and not contrary to the instructions from the Company.  During the Relationship, I will devote my entire best business efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without the prior written consent of the Company.

27.    On May 2, 2008, the transaction closed and TCI began operating the NIL Businesses as a subsidiary of TCI.

## J. WESTERDAL AND DEFENDANTS' BREACH

28.    Following the transaction close and the integration of the NIL Businesses into TCI, TCI began to uncover material differences between the representations made and the reality of the NIL Businesses.

29.    For example, despite assertions that the NIL Businesses were growing year over year and set for explosive and immediate growth, the NIL Businesses produced flat revenues for all of 2008.

30.    Additionally, despite Shareholders' assertions that the net profits from

1  the NIL Businesses would pay for the second and third installments of the purchase

2  price, the net profits were severely deficient to meet that obligation.

3      31.    Likewise, TCI discovered that Shareholders failed to honor the

4  representations, warranties and covenants in the Securities Exchange Agreement.

5  By way of example, Shareholders did not provide true, accurate and complete

6  Financial Statements in accordance with GAAP and those Financial Statements did

7  not fairly or accurately represent the NIL Businesses' then present financial

8  condition.

9      32.    TCI also discovered that J. Westerdal was shirking his responsibilities,

10  duties and obligations to TCI.  J. Westerdal failed to keep regular business hours,

11  failed to attend strategy and other business meetings and failed to manage

12  employees and clients.  Instead, J. Westerdal would take extended vacations and

13  brag to third parties that he need not attend to his duties as Chief Product Officer of

14  NIL.

15      33.    J. Westerdal also used company assets as his own personal bank

16  account, loaning himself money and giving himself raises without authorization.

17  When challenged, J. Westerdal informed TCI that the purpose of the loan and raise

18  was to bolster his application for a bank loan to purchase his primary residence.

19                **TCI's PERFORMANCE AND SET-OFF RIGHTS**

20      34.    As a result of the breaches and fraud alleged herein, TCI was, and is,

21  entitled to set-off the damages it has suffered against the Post Closing Payments

22  due NII pursuant to the Securities Exchange Agreement.

23      35.    On that basis, on or about May 8, 2009, TCI wire transferred $4

24  million to NII and transferred $1.5 million into an interest bearing escrow account

25  pending a determination on the set-off amount against the Post Closing Payments.

26      36.    TCI continued to investigate the amounts of its set-off claims between

27  May 8, 2009 and May 26, 2009.  That investigation revealed that much of the

28  misconduct, while egregious and startling, was difficult to monetize and continues

to be a moving and growing target.  While the amount of set-off is likely to be well in excess of $1.5 million, a final determination will require additional time and the retention of consultants and experts in order to fix an amount to its substantial claims.

37.   TCI also had no desire to break-up the recovery of funds between set-offs and other sources of repayment based on the tortious activity of J. Westerdal.

38.   On that basis, on May 26, 2009, TCI released the $1.5 million held in escrow to NII and notified NII that it would pursue all set-offs and damages in this litigation.

39.   TCI has, therefore, performed by paying the First Post Closing Payment.  All additional payment(s) are subject to all off-set due to Defendants breaches described herein as permitted by sections 6.7 and 6.8 of the Securities Exchange Agreement.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against NII and Shareholders)

40.   Plaintiffs reallege and incorporate by reference paragraphs 1 though 39 above as though fully set forth herein.

41.   Plaintiffs have complied with and fully performed its obligations, conditions, covenants and promises required pursuant to the Securities Exchange Agreement, or is otherwise excused from said performance based on the breaches alleged herein.

42.   Shareholders have violated their contractual obligations under the Securities Exchange Agreement by, among other things:

a)  breaching the representations and warranties in section 3.6 by, among other things:

(i)    misrepresenting or omitting material information concerning the financial condition of the NIL Businesses;

Case 2:09-cv-03088-R-AJW    Document 8    Filed 05/27/09    Page 13 of 20    Page ID
#:238

(ii)    failing to provide a fair and accurate financial condition of the NIL Businesses;

(iii)    failing to provide Financial Statements in accordance with GAAP;

b) failing to properly account for and pay pre-acquisition tax obligations;

c) using TCI funds to make payments to employees under the Stock Right Cancellation Agreements between NII and such employees;

d) using TCI funds to pay NII's attorney fees related to the acquisition and attorneys fees related to litigation with Stephen Douglas;

e) breaching the representation and warranty in Section 3.28 of the Exchange Agreement that none of the Shareholder Domain Names (as defined in the Exchange Agreement) were acquired using any of the assets of NII;

f) breaching the covenant in Section 5.9 of the Exchange Agreement to use commercially reasonable efforts to obtain confidentiality and assignment agreements from current and former employees that had not signed such an agreement as of the closing date; and

g) breaching the covenant in Section 5.10 of the Exchange Agreement to use commercially reasonable efforts to obtained all required consents from third parties.

43.    As a consequence of Shareholders' breach, Plaintiffs have suffered damage in an amount to be proven at trial.

44.    Plaintiffs are entitled to damages and/or to offset the remaining Post-Closing Payments as a set-off pursuant to section 6.7 of the Security Exchange Agreement.

OHS West:260664815.3    - 12 -    FIRST AMENDED COMPLAINT
CV 09-3088-R(AJWx)

## SECOND CLAIM FOR RELIEF

Breach of Contract

(Against J. Westerdal)

45.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 44 above as though fully set forth herein.

46.    Plaintiff has complied with and fully performed its obligations, conditions, covenants and promises required pursuant to the Offer Letter, the Noncompetition Agreement and the Information and Invention Agreement with J. Westerdal, has notified J. Westerdal that it is ready, willing and able to perform, or is otherwise excused from said performance based on the breaches alleged herein.

47.    J. Westerdal has violated and/or breached his obligations under the Offer Letter, the Noncompetition Agreement and the Information and Invention Agreement by, among other things:

    a)  founding, developing, owning and operating a competing DotMovie company during his employment with TCI;

    b)  raising $2 to $5 million in capital for the DotMovie company at the same time J. Westerdal was supposed to be devoting his full business effort and time to the company;

    c)  usurping TCI business opportunities by attending conferences on behalf of TCI, but promoting his own business opportunities, including the DotMovie company;

    d)  using TCI funds for the benefit of his DotMovie business;

    e)  unilaterally raising his salary without authorization; and

    f)  submitting expenses under the guise that they were incurred in connection with TCI's business;

    g)  disclosing confidential information concerning the NIL Businesses and TCI.

48.    In the Noncompetition Agreement, J. Westerdal agreed that breach of

"the provisions of this Agreement (including but not limited to those set forth in Section 1(b) below) would cause irreparable harm to Company and Thought Convergence, which harm will not be adequately and fully redressed by the payment of damages to Company and Thought Convergence."

49.    As a consequence of J. Westerdal's breaches, Plaintiffs have suffered damages in an amount to be proven at trial.

50.    As a consequence of J. Westerdal's breaches, Plaintiffs are also entitled to injunctive relief, enjoining J. Westerdal from wrongfully competing against TCI.

### THIRD CLAIM FOR RELIEF

Fraudulent Inducement

(Against J. Westerdal)

51.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 50 above as though fully set forth herein.

52.    To induce action on the part of Plaintiffs, J. Westerdal repeatedly made express and implied representations to Plaintiffs, and/or omitted informing Plaintiffs of material information regarding the accuracy and viability of the NIL Businesses, including among other things:

a)    misrepresenting or omitting material information concerning the financial condition of the NIL Businesses;

b)    failing to properly account for, disclose, and pay pre-acquisition tax obligations;

c)    failing to disclose that he would use TCI funds to make payments to employees under the Stock Right Cancellation Agreements between NII and such employees;

d)    failing to disclose the use of TCI funds to pay NII's attorney fees related to the acquisition and attorneys fees related to litigation with Stephen Douglas;

e)      failing to disclose that some of the Shareholder Domain Names (as defined in the Exchange Agreement) were acquired using assets of NII; and

f)      misrepresenting that J. Westerdal had another buyer for the NII Businesses ready, willing and able to acquire the NII Businesses for $60 million, when if fact no such offer existed.

53.    J. Westerdal's representations and/or omissions were false and misleading, and J. Westerdal either knew or should have known that Plaintiffs would rely on them.

54.    Plaintiffs did reasonably rely on J. Westerdal's false and misleading representations and omissions.

55.    As a direct and proximate result, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

Interference with Contract

(Against DotMovie)

56.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 55 above as though fully set forth herein.

57.    Plaintiffs entered into contracts with J. Westerdal, such that J. Westerdal committed to devote his full business effort and time to TCI and the NIL Businesses.

58.    DotMovie had actual knowledge of the contract between Plaintiffs and J. Westerdal and knew that Plaintiffs expected to obtain the benefits of J. Westerdal's full attention and devotion to TCI and the NIL Businesses.

59.    In blatant disregard of the contract between Plaintiffs and J. Westerdal, DotMovie interfered with the contracts between them by, among other things, usurping J. Westerdal's time and energy.

60.    As a direct result of DotMovie's interference with the contracts, Plaintiffs have suffered damages in an amount to be proven at trial.

61.    DotMovie engaged in the foregoing conduct maliciously and with the intent of injuring TCI and NIL and/or with knowing indifference to the likelihood that this conduct would injure TCI and NIL. Plaintiffs therefore requests an award of exemplary damages in an amount sufficient to punish DotMovie for his conduct.

**FIFTH CLAIM FOR RELIEF**

Breach of Fiduciary Duty

(Against J. Westerdal)

62.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 61 above as though fully set forth herein.

63.    J. Westerdal was at all relevant times an officer and board of director member of TCI and NIL. As such, J. Westerdal owed TCI and NIL duties of loyalty and fiduciary duties to, among other things, act in good faith and in a manner that benefits TCI and NIL and not to act for those whose interests, including J. Westerdal's own, conflict with TCI and NIL. Due to such duties, J Westerdal was and is prohibited from competing with TCI and NIL or attempting to appropriate TCI's or NIL's business or profits for his own personal benefit.

64.    By the actions alleged herein, J. Westerdal breached that duty of loyalty and fiduciary duty to TCI and NIL.

65.    In addition, J. Westerdal breached his fiduciary duties to TCI and NIL by meeting with NIL Businesses' employees and falsely informing them, among other things, that (i) TCI would be unable to make payroll; (ii) TCI was insolvent; and (iii) J. Westerdal would get his company back.

66.    J. Westerdal further breached his fiduciary duties by disclosing TCI and NIL confidential information to the public.

67.    As a consequence of J. Westerdal's breach, Plaintiffs have suffered damages in an amount to be proven at trial.

68.    J. Westerdal engaged in the foregoing conduct maliciously and with the intent of injuring TCI and NIL and/or with knowing indifference to the

1  likelihood that this conduct would injure TCI and NIL. Plaintiffs therefore requests

2  an award of exemplary damages in an amount sufficient to punish J. Westerdal for

3  his conduct.

4  ### SIXTH CLAIM FOR RELIEF

5  Breach of the Covenant of Good Faith and Fair Dealing

6  (Against NII and Shareholders)

7  69.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 68

8  above as though fully set forth herein.

9  70.    California law implies a covenant of good faith and fair dealing in all

10 contracts between parties entered in the State of California.

11 71.    As a result of the actions set forth hereinabove, Defendants breached

12 the covenant of good faith and fair dealing implied in the Transaction Documents,

13 and as a result thereof, Plaintiffs are entitled to damages as prayed.

14 ### SEVENTH CLAIM FOR RELIEF

15 Accounting

16 (Against NII and J. Westerdal)

17 72.    Plaintiffs reallege and incorporate by reference paragraphs 1 through

18 71 above as though fully set forth herein.

19 73.    J. Westerdal covenanted in the Securities Exchange Agreement that he

20 expended $430,000 in connection with the legitimate business expenses for the

21 Company.

22 74.    Plaintiffs are entitled to an Accounting to determine if those

23 expenditures were in fact legitimate business expenses.

24 75.    Plaintiffs seek an Order form the Court for such an accounting, access

25 to J. Westerdal's book and records, and the issuance of tax and financial

26 information concerning those expenditures.

27

28

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    Judgment in favor of Plaintiffs as to all causes of action;

2.    Compensatory damages, as well as incidental and consequential damages in a sum according to proof, but not less than $1.5 million;

3.    Exemplary damages according to proof at trial,

4.    For an injunction, enjoining J. Westerdal from wrongfully competing against TCI or NIL or otherwise breaching is obligations and duties to TCI and NIL;

5.    For an Order that an appropriate accounting be made, access be provided to all appropriate books and records of J. Westerdal and J. Westerdal's financial and tax documents be issued;

6.    For an award of reasonable attorneys' fees as authorized by section 7.12 of the Securities Exchange Agreement and applicable statutory provisions;

7.    For costs of suit herein incurred, and

8.    For such other and further relief as the Court deems proper.

Dated:        May 27, 2009

KENT B. GOSS
CHRISTOPHER J. CHAUDOIR
ORRICK, HERRINGTON & SUTCLIFFE LLP


CHRISTOPHER J. CHAUDOIR
Attorneys for Plaintiff
THOUGHT CONVERGENCE, INC. and
NAME INTELLIGENCE, INC.

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a trial by jury on all issues so triable.

3

4      Dated:        May 27, 2009              KENT B. GOSS
                                               CHRISTOPHER J. CHAUDOIR
5                                              ORRICK HERRINGTON & SUTCLIFFE LLP

6

7                                              CHRISTOPHER J. CHAUDOIR
                                               Attorneys for Plaintiff
8                                              THOUGHT CONVERGENCE, INC. and
                                               NAME INTELLIGENCE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260664815.3                                          FIRST AMENDED COMPLAINT
                                                              CV 09-3088-R(AJWx)