1   KENT B. GOSS (State Bar No. 131499)
    kgoss@orrick.com
2   CHRISTOPHER J. CHAUDOIR (State Bar No. 198444)
    cchaudoir@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street
4   Suite 3200
    Los Angeles, CA 90017
5   Telephone: +1-213-629-2020
    Facsimile:  +1-213-612-2499
6
    Attorneys for Plaintiffs
7   THOUGHT CONVERGENCE, INC. and NAME
    INTELLIGENCE, LLC
8

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11

12  THOUGHT CONVERGENCE, INC.,          Case No.  CV-09-03088-R (AJWx)
    a Delaware Corporation and NAME
13  INTELLIGENCE, LLC, a Delaware       **SECOND AMENDED
    limited liability company,          COMPLAINT FOR:**
14
            Plaintiffs,                 **1)  BREACH OF SECURITIES
15                                           EXCHANGE AGREEMENT;**
        v.
16                                      **2)  BREACH OF EMPLOYMENT,
    JAY WESTERDAL, an individual;            NON-COMPETE AND
17  PER WESTERDAL, an individual;            INFORMATION AND
    RAY BERO, an individual;                 INVENTION AGREEMENTS;**
18  CAMERON JONES, an individual;
    and NAME INTELLIGENCE, INC., a      **3)  BREACH OF FIDUCIARY
19  Washington corporation;                  DUTY;**
    DOTMOVIE, an unknown entity,
20                                      **4)  BREACH OF THE COVENANT
            Defendants.                      OF GOOD FAITH AND FAIR
21                                           DEALING; AND**

22                                      **5)  ACCOUNTING**

23                                          **DEMAND FOR JURY TRIAL**

24

25

26

27

28

1  Plaintiffs Thought Convergence, Inc. ("TCI") and Name Intelligence, LLC

2  ("NIL" and collectively with TCI, "Plaintiffs"), hereby demand a jury trial on their

3  Complaint and allege as follows:

4  **INTRODUCTION**

5      1.    This case concerns a blatant breach of contract by the sellers of an

6  internet business to TCI, the breach of an employment agreement, noncompete and

7  inventions agreement by one of sellers' principals, Jay Westerdal, and Mr.

8  Westerdal's breach of fiduciary duties owed to Plaintiffs. Following the

9  acquisition, Mr. Westerdal failed to assist the business in any meaningful way, used

10  company assets as his own personal bank account and began developing a

11  competing business in violation of his duties and contractual obligations to

12  Plaintiffs. Plaintiffs have suffered untold damage by virtue of these breaches,

13  creating substantial offsets to the purchase price for the business. By this action,

14  Plaintiffs are exercising their right to set-off the amounts to which they are entitled

15  by virtue the claims described herein against the Second Post-Closing Payment due

16  to Name Intelligence, Inc. ("NII"), if any.

17  **JURISDICTION AND VENUE**

18      2.    Jurisdiction is based on 28 U.S.C. §1332(c) as Plaintiffs and

19  Defendants are citizens of different states and the amount in controversy exceeds

20  $75,000 exclusive of interest and costs.

21      3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(2) as a

22  substantial amount or part of the events or omissions giving rise to the claim

23  occurred in this district. Venue is also proper in this Court pursuant to Section 7.11

24  of the Securities Exchange Agreement, which requires that any action arising out of

25  or relating to the agreement be brought in the State of California, County of Los

26  Angeles.

27  **PARTIES**

28      4.    Plaintiff TCI is, and at all times herein mentioned was, a corporation

1    duly organized pursuant to the laws of the state of Delaware, with its principal place

2    of business in Los Angeles, California.  TCI is an industry-leading provider of

3    domain management, monetization, sales and development tools and technologies

4    for premium domain owners and aggregators of high quality domain portfolios.

5        5.    Plaintiff Name Intelligence, LLC ("NIL") is, and at relevant times

6    herein mentioned was, a limited liability company organized in the state of

7    Delaware with citizenship in California.

8        6.    On information and belief, Defendant Mr. Jay Westerdal ("J.

9    Westerdal") is an individual residing in Mercer Island, Washington.  J. Westerdal

10   was the co-founder, former CEO and President of NII, and, prior to his termination

11   in May 2009, was the Chief Product Officer of NIL and TCI and is a member of the

12   TCI board of directors.

13       7.    On information and belief, Defendant Mr. Per Westerdal ("P.

14   Westerdal") is an individual residing in Bellevue, Washington.

15       8.    On information and belief, Defendant Mr. Ray Bero ("R. Bero") is an

16   individual residing in Seattle, Washington.

17       9.    J. Westerdal, P. Westerdal, R. Bero and C. Jones were each controlling

18   shareholders of NII (the "Shareholders").

19       10.   On information and belief, Defendant NII is, and at all times herein

20   mentioned was, a corporation duly organized pursuant to the laws of the state of

21   Washington, with its principal place of business in Bellevue, Washington.

22       11.   On information and belief, DotMovie is a business entity with a

23   website located at www.dotmovieregistry.com ("DotMovie").  On information and

24   belief, DotMovie has its principle place of business in Mercer Island, Washington

25   and J. Westerdal is its CEO and founder.

26       12.   TCI is informed and believes, and on that basis alleges, that the

27   Defendants named herein are the partners, joint venturers, alter egos, agents,

28   principals, representatives, employees, servants, successors or predecessors of the

1   other Defendants, each and all of them, with respect to the matters alleged herein.

2   The Defendants named herein acted within the course and scope of their authority

3   as such partners, joint venturers, alter egos, agents, principals, representatives,

4   employees, servants, successors or predecessors, and with the consent, ratification

5   and approval of their co-Defendants in doing the things alleged herein.

6                                   **THE TRANSACTION**

7          13.    In late 2007, representatives of TCI's predecessor in interest

8   approached J. Westerdal concerning the potential acquisition of NII's businesses,

9   Name Intelligence, LLC and Spry.Com, Inc. ("Spry" and together with NIL, the

10  "NIL Businesses").

11         14.    The NIL Businesses consisted of online tools for domain data

12  aggregation, analysis and management, and a virtual private server web hosting

13  services business.

14         15.    During the negotiations, J. Westerdal detailed how the NIL Businesses

15  would be complementary to TCI's business operations and assured TCI that the NIL

16  Businesses would be immediately accretive to TCI's bottom line.  J. Westerdal also

17  promised that the NIL Businesses were growing year to year, and set for

18  "immediate and explosive growth."  Likewise, J. Westerdal assured TCI that the

19  second and third installments of the agreed upon purchase price (as described

20  below) would be "easily paid by the net profits" of the NIL Businesses as reflected

21  in the Financial Statements of the NIL Businesses.  Indeed, as a member of TCI's

22  board of directors, an officer, a founder and an employee of the new entity, J.

23  Westerdal promised his continued full-time "best business efforts" to make this

24  happen.  J. Westerdal's assurances and promises in this regard materially induced

25  TCI not only to acquire the NIL businesses, but also to pay the purchase price

26  sought by J. Westerdal.

27

28

16.   To coax TCI into the transaction, J. Westerdal also presented TCI with an Executive Summary of the NIL Businesses.  The Executive Summary detailed that revenue generated from a portion of the NIL Businesses totaled between $3 and $4 million dollars.  The Executive Summary further indicated that the businesses' Domain Roundtable Conference would be held twice a year and that it would contribute significant additional revenue to the NIL Businesses.

17.   J. Westerdal further detailed that he had received another offer to purchase the NIL Businesses for a guaranteed sum of $60 million in cash and that he would proceed with that transaction unless TCI immediately agreed to purchase the NIL Businesses.

18.   Based on these representations, and others, TCI agreed to acquire the NIL Businesses for $16 million dollars and stock in TCI.

## THE TRANSACTION DOCUMENTS

19.   The transaction to acquire the NIL Businesses included several agreements, including, among others, the Securities Exchange Agreement dated May 2, 2008, by and among TCI, TrafficZ, Inc., NII, and each of the Shareholders (the "Securities Exchange Agreement")[1], Offer Letters dated May 28, 2009 between NIL and/or Spry.com, Inc. and the individual Shareholders (the "Offer Letters")[2], Restricted Stock Agreements dated May 2, 2008, by and among TCI and NII, J. Westerdal, P. Westerdal, R. Bero and C. Jones  (the "Restricted Stock Agreement")[3], Noncompetition Agreements dated May 2, 2008, by and between TCI and each individual Shareholder (the "Noncompetition Agreement")[4] and the Confidential Information and Invention Assignment Agreement ("Information and

[1] A true and correct copy of the Securities and Exchange Agreement is attached hereto as Exhibit A and incorporated herein by this reference.
[2] A true and correct copy of the Offer Letter between NIL and J. Westerdal is attached hereto as Exhibit B and incorporated herein by this reference.
[3] A true and correct copy of the Restricted Stock Agreement is attached hereto as Exhibit C.
[4] A true and correct copy of the Noncompetition Agreement between TCI and J. Westerdal is attached hereto as Exhibit D and incorporated herein by this reference.

1  Invention Agreement").[5]  The foregoing agreements are collectively referred to

2  herein as the "Transaction Documents."[6]

3        20.    As part of the purchase of the NIL Businesses, Shareholders made

4  certain representations and warranties concerning the transaction.  Among others,

5  Shareholders represented and warranted as follows:

> 3.24 Full Disclosure.  None of the representations or
> warranties made by the Company herein or in the Disclosure
> Schedule, the other Transaction Documents or any certificate
> furnished by the Company pursuant to this Agreement, when
> all such documents are read together in their entirety, contains
> or will contain any untrue statement of material fact, or omits
> to state any material fact necessary in order to make the
> statements contained herein or therein, in light of the
> circumstances under which made, not misleading.

                                    ***

15       21.    Shareholders also covenanted to, among other things, the following:

> 5.1   Expenses.  Whether or not the Transaction is
> consummated, except as otherwise provided herein, all fees
> and expenses incurred in connection with the Transaction,
> including, but not limited to, all legal, accounting, financial,
> advisory, consulting and all other fees and expenses of third
> parties incurred by a party in connection with the negotiation
> and effectuation of the terms and conditions of such
> Transaction Documents and the Transaction, shall be the
> obligation of the respective party incurring such fees and
> expenses; provided, that Shareholders shall pay all fees and
> expenses of the Company or Shareholders incurred in
> connection or with, or otherwise arising as a result of, the
> Transaction Documents and the Transaction....

                                    ***

---

[5] A true and correct copy of the Information and Invention Agreement is attached hereto as Exhibit E.
[6] Except were otherwise noted, capitalized terms shall have the same meaning specified in the Transaction Documents.

5.9   Confidentiality and Assignment Agreements.
Shareholders shall take all commercially reasonable measures
to obtain confidentiality and assignment agreements in the
form acceptable to Parent from each of the current and former
employees of the Company who prior to the Closing Date have
not signed a form of such agreement…

***

5.10 Third Party Consents.  If any of the Required Consents as
defined and set forth in Schedule 3.3 are not obtained and
delivered by the Company or Shareholders immediately prior
to or as of the Closing, but notwithstanding, the Transaction
contemplated hereunder is consummated, following the
Closing, Shareholders shall take all commercially reasonable
measures to obtain such Required Consents from third
parties…

22.    In addition to the representations, warranties and covenants, J.
Westerdal also agreed to devote his full attention to the business operations after the
acquisition and not to compete with TCI.

23.    Specifically, in the Offer Letter J. Westerdal agreed that:

**Obligations to the Company**.  During your Employment, you
shall devote your full business efforts and time to the Company.
During your Employment, without prior written approval of the
Company's Chief Executive Officer, you shall not render
services in any capacity to any other person or entity and shall
not act as a sole proprietor or partner of any other person or
entity or own more than five percent of the stock of any other
corporation.

24.    Likewise in the Noncompetition Agreement, J. Westerdal
acknowledged and agreed that:

C.  As a condition to its willingness to close the Exchange
pursuant to the Exchange Agreement, Thought Convergence
has required that Stockholder agree, and Stockholder has
agreed, to the noncompetition and nonsolicitation covenants

and the confidentiality agreements provided in this Agreement.

D.  By his signature below, Stockholder acknowledges and agreed that (a) his execution and delivery of this Agreement is a material inducement for Thought Convergence to enter into the Exchange Agreement and consummate the transactions contemplated thereby and (b) he will receive material financial benefits and other goods and valuable consideration from the Exchange.

\*\*\*

1.    <u>Noncompetition</u>.

(b)    During the period which shall commence at the Closing (as defined in the Exchange Agreement) . . . Stockholder shall not (i) enter into, participate in, provide advisory services in connection with, or otherwise assist with or be interested economically in the Restricted Business (as defined below) anywhere in the Business Area (as defined below), (ii) directly or indirectly (including without limitation, through any Affiliate (as defined below) of Stockholder, own, manage, operate, control or otherwise engage or participate in, or be connected as an owner, partner, principal, creditor, salesman, guarantor, advisor, member of the board of directors of, employee of or consultant in ... (B) any entity or business, division, group, or other subset of any business, engaged (or to Stockholders' knowledge, planning to engage) in the Restricted Business in the Business Area or (iii) make preparations to provide assistance to any Restricted Business or to form a Restricted Business in the Business Area, including but not limited to any research or development efforts aimed at ultimately benefiting a Restricted Business.

25.    Finally, in the Information and Invention Agreement, J. Westerdal agreed that:

2.    **Duties**.  I will perform for the Company such duties as may be designated by the Company from time to time or that are otherwise within the scope of the Relationship and not contrary to the instructions from the Company.  During the Relationship, I will devote my entire best business efforts to the interests of the Company and will not

1    engage in other employment or in any activities detrimental to the best
2    interests of the Company without the prior written consent of the
3    Company.

4                                        ***

5                (d)    **Assignment of Company Inventions.** I agree that
6    I will promptly make full written disclosure to the Company, will hold
     in trust for the sole right and benefit of the Company, and hereby
7    assign to the Company, or its designee, all my right, title and interest
8    throughout the world in any and all Company Inventions. I further
     acknowledge that all Company Inventions that are made by me (solely
9    or jointly with others) within the scope and during the period of the
10   Relationship are "works made for hire" (to the greatest extent
     permitted by applicable law) and are compensated by my salary. I
11   hereby waive and irrevocably quitclaim to the Company or its
12   designee any and all claims, of any nature whatsoever, that I now have
     or may have for infringement of any and all Company Inventions.[7]
13

14         26.    On May 2, 2008, the transaction closed and TCI began operating the

15   NIL Businesses as a subsidiary of TCI.

16                    **J. WESTERDAL AND DEFENDANTS' BREACH**

17         27.    Following the transaction close and the integration of the NIL

18   Businesses into TCI, TCI began to uncover material differences between the

19   representations made and the reality of the NIL Businesses.

20         28.    For example, despite assertions that the NIL Businesses were growing

21   year over year and set for explosive and immediate growth, the NIL Businesses

22   produced flat revenues for all of 2008.

23         29.    Additionally, despite Shareholders' assertions that the net profits from

24   the NIL Businesses would pay for the second and third installments of the purchase

25   price, the net profits were severely deficient to meet that obligation.

26

27   _____
     [7] Company Invention is defied in 4. (c) of the agreement as "an and all Inventions
28   that I may solely or jointly author, discover, develop conceive, or reduce to practice
     during the period of the Relationship . . ."

30.    Likewise, TCI discovered that NII and the Shareholders failed to honor the representations, warranties and covenants in the Securities Exchange Agreement and its incorporated exhibits.  By way of example, TCI discovered that J. Westerdal was shirking his responsibilities, duties and obligations to TCI.  J. Westerdal failed to keep regular business hours, failed to attend strategy and other business meetings and failed to manage employees and clients.  Instead, J. Westerdal would take extended vacations and brag to third parties that he need not attend to his duties as Chief Product Officer of TCI.

31.    J. Westerdal also used company assets as his own personal bank account, loaning himself money and giving himself raises without authorization.  When challenged, J. Westerdal informed TCI that the purpose of the loan and raise was to bolster his application for a bank loan to purchase his primary residence.

### TCI's PERFORMANCE AND SET-OFF RIGHTS

32.    As a result of the breaches alleged herein, TCI was, and is, entitled to set-off the damages it has suffered against the Post Closing Payments due NII pursuant to the Securities Exchange Agreement.

33.    On that basis, on or about May 8, 2009, TCI wire transferred $4 million to NII and transferred $1.5 million into an interest bearing escrow account pending a determination on the set-off amount against the Post Closing Payments.

34.    TCI continued to investigate the amounts of its set-off claims between May 8, 2009 and May 26, 2009.  That investigation revealed that much of the misconduct, while egregious and startling, was difficult to monetize and continues to be a moving and growing target.  While the amount of set-off is likely to be well in excess of $1.5 million, a final determination will require additional time and the retention of consultants and experts in order to fix an amount to its substantial claims.

35.    TCI also had no desire to break-up the recovery of funds between set-offs and other sources of repayment based on the tortious activity of J. Westerdal.

36.    On that basis, on May 26, 2009, TCI released the $1.5 million held in escrow to NII and notified NII that it would pursue all set-offs and damages in this litigation.

37.    The release of the $1.5 million held in escrow represents a full payment of the First Post Closing Payment, payment to J. Westerdal of $430,000, payment of interest and an inadvertent overpayment, as follows:

| Payments | | |
|---|---|---|
| Payment to Name Intelligence on May 8, 2009 (minus holdback) | $ | 3,534,989.81 |
| Payment to Jay Westerdal on May 8, 2009 | $ | 465,010.19 |
| Release of Holdback on May 26, 2009 | $ | 1,565,579.58 |
| **Total** | **$** | **5,565,579.58** |
| | | |
| **Interest Paid at 8%** | | |
| Interest Paid to Jay Westerdal (May 2, 2009 – May 8, 2009) | $ | 610.19 |
| Interest Paid to Name Intelligence (May 2, 2009 – May 8, 2009 & May 2, 2009 – May 26, 2009 on Holdback) | $ | 12,355.11 |
| | | |
| **Overpayment** | $ | 88,214.28 |

38.    In addition to the set-offs sought in this action, TCI will also seek reimbursement of its overpayment in the amount of $88,214.28.

39.    TCI has, therefore, performed by paying the First Post Closing Payment. All additional payment(s) are subject to all off-set due to Defendants breaches described herein as permitted by sections 6.7 and 6.8 of the Securities Exchange Agreement.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against NII and J. Westerdal)

40.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 39 above as though fully set forth herein.

41.    Plaintiffs have complied with and fully performed their obligations,

1    conditions, covenants and promises required pursuant to the Securities Exchange

2    Agreement, or are otherwise excused from said performance based on the breaches

3    alleged herein.

4        42.    Shareholders have violated their contractual obligations under the

5    Securities Exchange Agreement by, among other things:

6            a)  using TCI funds to make payments to employees under the Stock

7    Right Cancellation Agreements between NII and such employees;

8            b)  using TCI funds to pay NII's attorney fees related to the acquisition

9    and attorneys fees related to litigation with Stephen Douglas;

10           c)  breaching the representation and warranty in Section 3.28 of the

11   Exchange Agreement that none of the Shareholder Domain Names (as defined in

12   the Exchange Agreement) were acquired using any of the assets of NII;

13           d)  breaching the covenant in Section 5.9 of the Exchange Agreement

14   to use commercially reasonable efforts to obtain confidentiality and assignment

15   agreements from current and former employees that had not signed such an

16   agreement as of the closing date; and

17           e)  breaching the covenant in Section 5.10 of the Exchange Agreement

18   to use commercially reasonable efforts to obtained all required consents from third

19   parties.

20           f)  breaching the representation and warranty in Section 3.24 of the

21   Exchange Agreement, by J. Westerdal shirking his responsibilities, duties and

22   obligations to TCI, including without limitation, failing to keep regular business

23   hours, failing to attend strategy and other business meetings and failing to manage

24   employees and clients.  J. Westerdal would instead take extended vacations and

25   brag to third parties that he need not attend to his duties as Chief Product Officer of

26   TCI.

27       43.    As a consequence of Shareholders' breach, Plaintiffs have suffered

28   damage in an amount to be proven at trial.

1      44.    Plaintiffs are entitled to damages and/or to offset the remaining Post-

2    Closing Payments as a set-off pursuant to section 6.7 of the Security Exchange

3    Agreement.

4                     **SECOND CLAIM FOR RELIEF**

5                           Breach of Contract

6                        (Against J. Westerdal)

7      45.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 44

8    above as though fully set forth herein.

9      46.    Plaintiff has complied with and fully performed its obligations,

10    conditions, covenants and promises required pursuant to the Offer Letter, the

11    Noncompetition Agreement and the Information and Invention Agreement with J.

12    Westerdal, has notified J. Westerdal that it is ready, willing and able to perform, or

13    is otherwise excused from said performance based on the breaches alleged herein.

14      47.    J. Westerdal has violated and/or breached his obligations under the

15    Offer Letter, the Noncompetition Agreement and the Information and Invention

16    Agreement by, among other things:

17           a)  raising $2 to $5 million in capital for the DotMovie business at the

18    same time J. Westerdal was supposed to be devoting his full business effort and

19    time to the company;

20           b)  usurping TCI business opportunities by attending conferences on

21    behalf of TCI, but promoting his own business opportunities, including the

22    DotMovie business;

23           c)  using TCI funds for the benefit of his DotMovie business;

24           d)  unilaterally raising his salary without authorization; and

25           e)  submitting expenses under the guise that they were incurred in

26    connection with TCI's business;

27           f)  disclosing confidential information concerning the NIL Businesses

28    and TCI.

1    48.    In the Noncompetition Agreement, J. Westerdal agreed that breach of

2    "the provisions of this Agreement (including but not limited to those set forth in

3    Section 1(b) below) would cause irreparable harm to Company and Thought

4    Convergence, which harm will not be adequately and fully redressed by the

5    payment of damages to Company and Thought Convergence."

6    49.    As a consequence of J. Westerdal's breaches, Plaintiffs have suffered

7    damages in an amount to be proven at trial.

8    50.    As a consequence of J. Westerdal's breaches, Plaintiffs are also

9    entitled to injunctive relief, enjoining J. Westerdal from wrongfully competing

10   against TCI.

11                         **THIRD CLAIM FOR RELIEF**

12                          Breach of Fiduciary Duty

13                          (Against J. Westerdal)

14   51.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 50

15   above as though fully set forth herein.

16   52.    J. Westerdal was at all relevant times an officer and board of director

17   member of TCI and NIL.  As such, J. Westerdal owed TCI and NIL duties of

18   loyalty and fiduciary duties to, among other things, act in good faith and in a

19   manner that benefits TCI and NIL and not to act for those whose interests,

20   including J. Westerdal's own, conflict with TCI and NIL.  Due to such duties, J

21   Westerdal was and is prohibited from competing with TCI and NIL or attempting to

22   appropriate TCI's or NIL's business or profits for his own personal benefit.

23   53.    By the actions alleged herein, J. Westerdal breached that duty of

24   loyalty and fiduciary duty to TCI and NIL.

25   54.    In addition, J. Westerdal breached his fiduciary duties to TCI and NIL

26   by meeting with NIL Businesses' employees and falsely informing them, among

27   other things, that (i) TCI would be unable to make payroll; (ii) TCI was insolvent;

28   and (iii) J. Westerdal would get his company back.

1    55.    J. Westerdal further breached his fiduciary duties by disclosing TCI

2    and NIL confidential information to the public.

3    56.    As a consequence of J. Westerdal's breach, Plaintiffs have suffered

4    damages in an amount to be proven at trial.

5    57.    J. Westerdal engaged in the foregoing conduct maliciously and with

6    the intent of injuring TCI and NIL and/or with knowing indifference to the

7    likelihood that this conduct would injure TCI and NIL.  Plaintiffs therefore request

8    an award of exemplary damages in an amount sufficient to punish J. Westerdal for

9    his conduct.

10                  **FOURTH CLAIM FOR RELIEF**

11              Breach of the Covenant of Good Faith and Fair Dealing

12                      (Against NII and Shareholders)

13    58.    Plaintiffs reallege and incorporate by reference paragraphs 1 though 57

14    above as though fully set forth herein.

15    59.    California law implies a covenant of good faith and fair dealing in all

16    contracts between parties entered in the State of California.

17    60.    As a result of the actions set forth hereinabove, Defendants breached

18    the covenant of good faith and fair dealing implied in the Transaction Documents,

19    and as  a result thereof, Plaintiffs are entitled to damages as prayed.

20                  **FIFTH CLAIM FOR RELIEF**

21                          Accounting

22                    (Against NII and J. Westerdal)

23    61.    Plaintiffs reallege and incorporate by reference paragraphs 1 through

24    60 above as though fully set forth herein.

25    62.    J. Westerdal covenanted in the Securities Exchange Agreement that he

26    expended $430,000 in connection with the legitimate business expenses for the

27    Company.

28    63.    Plaintiffs are entitled to an Accounting to determine if those

1    expenditures were in fact legitimate business expenses.

2        64.    Plaintiffs seek an Order form the Court for such an accounting, access

3    to J. Westerdal's book and records, and the issuance of tax and financial

4    information concerning those expenditures.

5                            **PRAYER FOR RELIEF**

6        WHEREFORE, Plaintiffs pray for the following relief:

7        1.    Judgment in favor of Plaintiffs as to all causes of action;

8        2.    Compensatory damages, as well as incidental and consequential

9    damages in a sum according to proof, but not less than $1.5 million;

10       3.    For an injunction, enjoining J. Westerdal from wrongfully competing

11   against TCI or NIL, or disclosing confidential information or otherwise breaching

12   his obligations and duties to TCI and NIL and mandating that J. Westerdal assign

13   all interest, right and title to the DotMovieRegistry.com business, including without

14   limitation the DotMovieRegistry.com domain name any domain names related

15   thereto;

16       4.    For an Order that an appropriate accounting be made, access be

17   provided to all appropriate books and records of J. Westerdal and J. Westerdal's

18   financial and tax documents be issued;

19       5.    For an award of reasonable attorneys' fees as authorized by section

20   7.12 of the Securities Exchange Agreement and applicable statutory provisions;

21       6.    For costs of suit herein incurred, and

22       7.    For such other and further relief as the Court deems proper.

23

24

25

26

27

28

1

2     Dated:          January 13, 2010          KENT B. GOSS
                                                CHRISTOPHER J. CHAUDOIR
                                                ORRICK HERRINGTON & SUTCLIFFE LLP

3

4                                               CHRISTOPHER J. CHAUDOIR
                                                Attorneys for Plaintiff
5                                               THOUGHT CONVERGENCE, INC. and
                                                NAME INTELLIGENCE, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a trial by jury on all issues so triable.

3

4      Dated:        January 13, 2010        KENT B. GOSS
                                             CHRISTOPHER J. CHAUDOIR
5                                            ORRICK HERRINGTON & SUTCLIFFE LLP

6                                            *Christopher Chaudoir/wsc*

7                                            _____
                                             CHRISTOPHER J. CHAUDOIR
8                                            Attorneys for Plaintiff
                                             THOUGHT CONVERGENCE, INC. and
                                             NAME INTELLIGENCE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2       I am more than eighteen years old and not a party to this action.  My business address is
Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street, Suite 3200, Los Angeles,

3    California  90017.  On January 19, 2010, I served the following document(s):

4    **SECOND AMENDED COMPLAINT**

5       ☐     by placing the document(s) listed above in a sealed envelope with postage
thereon fully prepaid, in the United States mail at Los Angeles, California

6             addressed as set forth below.

7       ☒     By depositing a true and correct copy of the document(s) listed above with
Fed Ex in Los Angeles, California, enclosed in a sealed envelope.

8
        ☐     (by Electronic Mail), I caused such documents to be transmitted by electronic

9             mal to the offices of the addressee.

10   Hamilton Gardiner
     *hamilton@lawhg.net*

11   Holmquist & Gardiner, PLLC
     1000 Second Avenue, Suite 1770

12   Seattle, WA  98104
     *Tel: (206) 438-9116*

13   *Fax: (206) 694-4601*

14   *Attorneys for Defendants and*
     *Counterclaimants*

15   **JAY WESTERDAL, and NAME**
     **INTELLIGENCE INC. and**

16   **Defendant PER WESTERDAL**

17      I am employed in the county from which the mailing occurred.  On the date indicated

18   above, I placed the sealed envelope(s) for collection and mailing at this firm's office business
address indicated above.  I am readily familiar with this firm's practice for the collection and

19   processing of correspondence for mailing with the United States Postal Service.  Under that
practice, the firm's correspondence would be deposited with the United States Postal Service on

20   this same date with postage thereon fully prepaid in the ordinary course of business.

21      I declare under penalty of perjury that the foregoing is true and correct.

22      Executed on January 19, 2010 at Los Angeles, California.

23

24                                        LUPE FLORES

25

26

27

28

OHS West:260660445.1                    - 2 -

## PROOF OF SERVICE BY HAND DELIVERY

I declare I am a resident of the State of California and over the age of eighteen

years, and not a party to the within action; my business address is USA Network, Inc., 800

West 1st Street, Suite 200-B, Los Angeles, California 90012.

On January 19, 2010, I served the following document(s):

## SECOND AMENDED COMPLAINT

☒    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below:

Robert L. Wallan
*robert.wallan@pillsburylaw.com*
Mariah L. Brandt
*mariah.brandt@pillsburylaw.com*
PILLSBURY WINTHROP SHAW PITTMAN
LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
*Tel:  (213) 488-7100*
*Fax:  (213) 629-1033*

*Attorneys for Defendants and Counterclaimants*
***JAY WESTERDAL and NAME***
***INTELLIGENCE INC. and***
***Defendant PER WESTERDAL***

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2010, at Los Angeles, California.

_____Jeffrey Lopz_____          _____
                                                            USA Network, Inc.