HOLMQUIST & GARDINER PLLC
HAMILTON H. GARDINER #249038
hamilton@lawhg.net
1000 Second Avenue, Suite 1770
Seattle, WA 98104
Telephone: (206) 438-9116
Facsimile: (206) 694-4601

PILLSBURY WINTHROP SHAW PITTMAN LLP
ROBERT L. WALLAN #126480
robert.wallan@pillsburylaw.com
MARIAH L. BRANDT #224076
mariah.brandt@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Defendants and Counterclaimants
NAME INTELLIGENCE, INC. and JAY WESTERDAL
and Defendants PER WESTERDAL and RAY BERO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THOUGHT CONVERGENCE, INC., a Delaware Corporation and NAME INTELLIGENCE, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>JAY WESTERDAL, an individual; PER WESTERDAL, an individual; RAY BERO, an individual; CAMERON JONES, an individual; and NAME INTELLIGENCE, INC., a Washington corporation; DOTMOVIE, an unknown entity,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | No. CV-09-03088 R (AJWx)<br><br>DEFENDANTS AND COUNTERCLAIMANTS NAME INTELLIGENCE, INC. AND JAY WESTERDAL AND DEFENDANTS PER WESTERDAL AND RAY BERO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT<br><br>Date: March 15, 2010<br>Time: 10:00 a.m.<br>CrtRm: 8<br>Judge: Manuel L. Real |

601074686v2

Case No. CV-09-03088 R (AJWx)
MEMO OF Ps &As I/S/O MOTION TO STRIKE
PORTIONS OF THE SECOND AMENDED COMPLAINT

Table of Contents

Page

I.  INTRODUCTION. ................................................................................................. 1

II. STATEMENT OF FACTS. .................................................................................... 2

III. ARGUMENT. ........................................................................................................ 5

    A. Standard for Granting a Motion to Strike. .......................................... 5

    B. Striking TCI's Remaining Irrelevant Fraud Allegations Is Proper to Narrow the Scope of the Case, as the Parties Agreed to Do, and to Focus the Issues for the Jury. ......................................... 6

IV. CONCLUSION. ..................................................................................................... 9

Table of Authorities

Page(s)

Cases

California ex rel. State Lands Commission v. United States,
    512 F. Supp. 36 (N.D. Cal. 1981) ..................................................................5

Fantasy, Inc. v. Fogerty,
    984 F.2d 1524 (9th Cir. Cal. 1993) ...............................................................5

Loughrey v. Landon,
    381 F. Supp. 884 (E.D. Pa. 1974) .................................................................6

Sears, Roebuck & Co. v. Metropolitan Engravers,
    245 F.2d 67 (9th Cir. 1956) ...........................................................................5

Sidney-Vinstein v. A.H. Robins Co.,
    697 F.2d 880 (9th Cir. 1983) .........................................................................5

Statutes and Codes

California Civil Code,
    Section 1639 ..................................................................................................7

California Corporations Code,
    Section 25401 ................................................................................................4

Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 12(f) ...................................................................................................2, 5

Other Authorities

5 Charles A. Wright & Arthur R. Miller,
    Federal Practice and Procedure ..................................................................5

William W. Schwarzer, et al.,
    California Practice Guide: Federal Civil Procedure Before
    Trial (TRG 1992) ...........................................................................................5

I.    INTRODUCTION.

The claims and counterclaims in the present action arise out of a transaction where plaintiff and counterdefendant Thought Convergence Inc. ("TCI") purchased defendant and counterclaimant Name Intelligence, Inc.'s ("Name Intelligence") business. TCI purchased Name Intelligence's online business involving domain names for $16 million and 15% of the shares of TCI. As part of the transaction Name Intelligence's co-founder, President and CEO Jay Westerdal entered into various agreements regarding his employment as Chief Products Officer of TCI's newly acquired subsidiary Name Intelligence, LLC ("NIL").

TCI and NIL's (collectively "TCI") First Amended Complaint against Name Intelligence and its shareholders J. Westerdal, Per Westerdal and Ray Bero (collectively "Defendants") alleged claims for breach of the purchase agreement, breach of J. Westerdal's employment agreements, fraudulent inducement, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and accounting. In return, Name Intelligence and J. Westerdal ("Counterclaimants") filed various counterclaims based on breaches of contract and fraud.

The parties made substantial progress toward settlement at a mediation held on January 6, 2010. Based on this progress the parties sought a continuance of the trial date and corresponding deadlines. One of the representations in the stipulation for a continuance was that the parties agreed to narrow the scope of their claims through amended pleadings. The Court granted the continuance and with the Court's permission the parties filed amended pleadings.

In compliance with their representations to this Court, Counterclaimants then filed their First Amended Counterclaims ("FACC") in which they withdrew all claims based on fraud, including all allegations of

1   misrepresentations.  TCI, on the other hand, filed its Second Amended
2   Complaint ("SAC"), in which it removed its claim for fraudulent inducement
3   but failed to remove all of the allegations of fraud.  Specifically, TCI
4   maintained within the SAC its allegations of oral misrepresentations made
5   prior to the execution of the purchase agreement that are not contained in the
6   written terms of the integrated contract.  These allegations relate solely to
7   TCI's now withdrawn fraudulent inducement claim and are irrelevant and
8   impertinent to TCI's remaining claims.
9          Pursuant to Federal Rule of Civil Procedure 12(f), Defendants move to
10  strike the irrelevant pre-transaction oral misrepresentation allegations found in
11  the SAC at paragraphs 15-18 and 27-29 in their entirety.  It is proper to strike
12  these allegations to streamline the scope of the issues in this case (as the
13  parties represented to the Court that they would) and to focus the jury's
14  attention on the real issues.  Further, it is proper to strike these inactionable
15  allegations to avoid undue prejudice to Defendants.  If these allegations
16  remain in TCI's SAC, then Defendants will be forced to conduct discovery
17  and prepare for trial on pre-transaction negotiations, which are irrelevant to the
18  remaining claims that are solely based on post-transaction conduct.
19      II.    STATEMENT OF FACTS.
20         TCI is a provider of domain management, monetization, sales and
21  development tools and technologies for domain owners and aggregators of
22  domain portfolios.  RFJN Ex. 9 (SAC) ¶ 4.  In late 2007, representatives of
23  TCI's predecessor in interest approached J. Westerdal concerning the potential
24  acquisition of Name Intelligence's businesses, Name Intelligence, LLC
25  ("NIL") and Spry.Com, Inc. ("Spry," and together with NIL, the "NIL
26  Businesses").  Id. at ¶¶ 6, 13.  The NIL Businesses consisted of online tools
27  for domain data aggregation, analysis and management, and a virtual private
28  server web hosting services business.  Id. at ¶ 14.

1  The transaction to acquire the NIL Businesses was consummated on May 2, 2008, with the execution of a Securities Exchange Agreement (the "Agreement") and various other related agreements ("Transaction Documents"). Id. ¶ 19, Exs. A-E. Under the Agreement, TCI acquired the NIL Businesses in exchange for $16 million and stock in TCI. Id. at ¶ 18. The Agreement contained an integration clause at section 7.8 providing that the Transaction Documents superseded any prior or contemporaneous oral or written agreements. RFJN Ex. 9 (SAC) at 140 at § 7.8.

TCI's First Amended Complaint ("FAC") alleged a myriad of inflammatory claims including: (1) breach of the Agreement; (2) breach of J. Westerdal's various employment agreements; (3) fraudulent inducement;(4) breach of fiduciary duty; (5) breach of the covenant of good faith and fair dealing; and (6) accounting. RFJN Ex. 1 (FAC). TCI's FAC is long on flowery, accusatory conclusions but short on facts. TCI's fraudulent inducement claim was primarily based on alleged pre-transaction oral misrepresentations allegedly made by J. Westerdal. Id. at ¶¶ 16-18, 28-30 52(f).

Under the Agreement, on May 2, 2009 TCI owed a payment of $5 million dollars to Name Intelligence and payment of $430,000 plus interest to J. Westerdal. RFJN Ex. 9 (SAC) at 115 at first paragraph, at 116 at § 1.2(b), at 135 at § 5.8. TCI breached the Agreement by failing to timely make these payments and instead made late payments on May 6, 2009 and May 26, 2009. Id. at ¶¶ 33, 36.

On June 26, 2009 Name Intelligence and J. Westerdal filed counterclaims against TCI alleging, among other things, breach of the Agreement for failure to pay, breach of the Agreement for failure to properly form an equity incentive plan, breach of contract for failure to pay amounts due to J. Westerdal, breach of representations and warranties,

1  misrepresentation and fraud, and violations of California Corporations Code
2  section 25401.[1]  RFJN Ex. 2.
3       On January 6, 2010, the parties participated in a mediation before the
4  Hon. George P. Shiavelli.  RFJN Ex. 3 (Stip re Continuance).  During that
5  mediation, the parties made substantial progress toward identifying the issues
6  and obstacles to settlement.  Id.  Based on this progress, the parties sought a
7  continuance of the trial date and all corresponding dates to allow them time to
8  attempt to settle the matter.  Id.  As part of the stipulation seeking a
9  continuance, the parties represented to the Court that they agreed to narrow the
10 scope of their claims through amended pleadings.  Id.  The Court granted the
11 continuance.  Id. at Ex. 4 (Order re Continuance).  The parties then filed
12 stipulations to amend, in which they again represented to the Court that they
13 agreed to narrow the scope of their claims through amended pleadings.  Id. at
14 Exs. 5-6 (Stips re Amendments).  The Court issued an order allowing the
15 requested amendments.  Id. at Exs. 7-8 (Orders on Amendments).
16      On January 19, 2010, Counterclaimants filed their FACC, in which they
17 withdrew all of their claims based on fraud, including breach of
18 representations and warranties, misrepresentation and fraud, and violations of
19 California Corporations Code section 25401.  See RFJN Ex. 10 (FACC).
20 Counterclaimants also removed all allegations of misrepresentations from their
21 FACC.  Id.
22      On January 19, 2010, TCI filed its SAC, in which it removed its Third
23 Claim for Relief for Fraudulent Inducement but failed to remove the

---

[1] Defendants notified TCI in the beginning of this case that they did not have a copy of the closing documents and requested such documents from TCI. Despite this request, TCI did not produce the closing documents for some months, until it did so as its initial disclosure documents. Based on recently discovered information in these documents, Defendants amended their counterclaim to remove all claims based on fraud.

1  corresponding misrepresentation allegations. RFJN Ex. 9 (SAC) ¶¶ 15-18, 27-
2  29.

3      III.    ARGUMENT.

4      A.    Standard for Granting a Motion to Strike.

5  Federal Rule of Civil Procedure 12(f) provides that a court "may order
6  stricken from any pleading . . . any redundant, immaterial, impertinent, or
7  scandalous matter." Fed. R. Civ. P. 12(f). "(T)he function of a 12(f) motion
8  to strike is to avoid the expenditure of time and money that must arise from
9  litigating spurious issues by dispensing with those issues prior to trial. . . ."
10 Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).
11 "'Immaterial' matter is that which has no essential or important relationship to
12 the claim for relief or the defenses being pleaded. 'Impertinent' matter
13 consists of statements that do not pertain, and are not necessary, to the issues
14 in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. Cal.
15 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and
16 Procedure § 1382, at 706-07, 711 (1990)), rev'd on other grounds, 510 US
17 517, 534-35 (1994).

18 Grounds for a motion to strike must appear on the face of the pleading
19 or from matters that a court may judicially notice. Fantasy, Inc., 984 F.2d at
20 1528 (citing Sears, Roebuck & Co. v. Metro. Engravers, 245 F.2d 67, 70
21 (9th Cir. 1956); William W. Schwarzer, et al., Cal. Prac. Guide: Fed. Civ. Pro.
22 Before Trial 9:403 (TRG 1992)). Granting a motion to strike is proper for the
23 purpose of streamlining the ultimate resolution of the action and focusing the
24 jury's attention on the real issues in the case. Fantasy, Inc., 984 F.2d at 1528
25 (citing Cal. ex rel. State Lands Comm'n v. U.S., 512 F. Supp. 36, 38
26 (N.D. Cal. 1981)). Additionally, a motion to strike is also proper where the
27 presence of the allegations in the pleading will be prejudicial to the moving
28

party. Fantasy, Inc., 984 F.2d at 1528 (citing Loughrey v. Landon, 381 F. Supp. 884, 888 (E.D. Pa. 1974)).

      B.      Striking TCI's Remaining Irrelevant Fraud Allegations Is Proper to Narrow the Scope of the Case, as the Parties Agreed to Do, and to Focus the Issues for the Jury.

TCI's Third Claim for Relief for Fraudulent Inducement in its FAC was based on alleged pre-transaction oral misrepresentations not contained in the written terms of the integrated Agreement. TCI concedes that it does not have a valid fraud claim by removing their Third Claim for Relief for Fraudulent Inducement from their SAC. See RFJN Ex. 9 (SAC). Despite withdrawing their claim for fraudulent inducement, TCI's SAC retains allegations of pre-transaction oral misrepresentations that are not relevant to Plaintiffs' remaining claims. Specifically, TCI still alleges in the SAC that J. Westerdal made the following alleged oral misrepresentations prior to entering into the Agreement:

- During the negotiations, J. Westerdal detailed how the NIL Businesses would be complementary to TCI's business operations and assured TCI that the NIL Businesses would be immediately accretive to TCI's bottom line. J. Westerdal also promised that the NIL Businesses were growing year to year, and set for "immediate and explosive growth." Likewise, J. Westerdal assured TCI that the second and third installments of the agreed upon purchase price (as described below) would be "easily paid by the net profits" of the NIL Businesses as reflected in the Financial Statements of the NIL Businesses. Indeed, as a member of TCI's board of directors, an officer, a founder and an employee of the new entity, J. Westerdal promised his continued full-time "best business efforts" to make this happen. J. Westerdal's assurances and promises in this regard materially induced TCI not only to acquire the NIL businesses, but also to pay the purchase price sought by J. Westerdal. Id. at ¶ 15.

- To coax TCI into the transaction, J. Westerdal also presented TCI with an Executive Summary of the NIL Businesses. The Executive Summary detailed that revenue generated from a portion of the NIL Businesses totaled between $3 and $4 million dollars. The Executive Summary further indicated that the businesses' Domain

      Roundtable Conference would be held twice a year and that it would contribute significant additional revenue to the NIL Businesses. <u>Id.</u> at ¶ 16.

- J. Westerdal further detailed that he had received another offer to purchase the NIL Businesses for a guaranteed sum of $60 million in cash and that he would proceed with that transaction unless TCI immediately agreed to purchase the NIL Businesses. <u>Id.</u> at ¶ 17.

- Based on these representations, and others, TCI agreed to acquire the NIL Businesses for $16 million dollars and stock in TCI. <u>Id.</u> at ¶ 18.

- Following the transaction close and the integration of the NIL Businesses into TCI, TCI began to uncover material differences between the representations made and the reality of the NIL Businesses. <u>Id.</u> at ¶ 27.

- For example, despite assertions that the NIL Businesses were growing year over year and set for explosive and immediate growth, the NIL Businesses produced flat revenues for all of 2008. <u>Id.</u> at ¶ 28.

- Additionally, despite Shareholders' assertions that the net profits from the NIL Businesses would pay for the second and third installments of the purchase price, the net profits were severely deficient to meet that obligation. <u>Id.</u> at ¶ 29.

      These alleged pre-transaction oral misrepresentations are not relevant to TCI's remaining claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and accounting. This is because all of the claims remaining in TCI's SAC arise out of contractual obligations. Pre-transaction statements not contained in the written terms of the contract have no bearing on these contract based claims.

      Specifically, the breach of contract claim and related breach of the covenant of good faith and fair dealing claim must be determined based on the written terms of the contract alone. Cal. Civ. Code § 1639. This is especially true where, as in the present case, the contract contains an integration clause expressly stating that the contract supersedes all prior and contemporaneous oral statements or inducements made between the parties and that such

statements are inadmissible in any proceeding concerning the contract. RFJN Ex. 9 (SAC) at 140 at § 7.8.

TCI's breach of fiduciary duty claim also arises out of contract. Id. at ¶¶ 51-57. This is because any potential fiduciary obligations on the part of J. Westerdal would necessarily have to arise out of his post-transaction employment relationship with TCI. This employment relationship was formed by J. Westerdal's employment contract, which was executed as part of the Transaction Documents. RFJN Ex. 9 (SAC) at 223-227. Therefore, any breach of fiduciary duty must be determined based off of the written terms of the integrated employment agreement. Id. at 225 at § 8(c); see also RFJN Ex. 9 (SAC) 140 at § 7.8 (integration clause in the Agreement applies to all Transaction Documents). Since the pre-transaction oral representations are not part of the employment agreements, they cannot be the basis for any breach of fiduciary duty arising out of those contracts.

TCI's accounting claim likewise arises out of contract and involves a specific amount TCI agreed to pay J. Westerdal under the Agreement. RFJN Ex. 9 (SAC) ¶ 62, at 135 at § 5.8. Specifically, TCI agreed to pay J. Westerdal $430,000 plus interest. Id. This amount was to satisfy J. Westerdal's legitimate business expenses. Id. Pre-transaction oral representations not contained in written terms of the integrated Agreement have no bearing on whether the Agreement allows for a post-transaction accounting of this amount.

Though TCI's SAC omits a claim for relief that was previously plead, TCI has still failed to narrow the scope of the issues. This failure results from the improper maintenance of alleged oral pre-transaction representations within the SAC. It is proper to strike such irrelevant allegations to focus the case. While this is the general rule, it is especially true in this case where the parties represented to the Court that they would narrow the scope of their

1  claims.  This is especially true due to Further, these irrelevant allegations
2  create risk of confusing the issues.  Granting the present Motion to Strike will
3  accomplish the proper goal of streamlining the ultimate resolution of this
4  action, as well as focusing the jury's attention on the real issues in the case.
5  　　　Further, striking the irrelevant allegations will avoid prejudice to
6  Defendants.  If these allegations remain in the case, then Defendants will be
7  forced to conduct discovery and prepare for trial on pre-transaction
8  negotiations, which are irrelevant to the claims which remain in this case that
9  are all based on post-transaction conduct.

10  　　　IV.   CONCLUSION.
11  　　　Based on the foregoing arguments, Defendants respectfully request that
12  this Court strike all paragraphs from the Second Amended Complaint
13  regarding allegations of alleged pre-transaction oral misrepresentations.
14  Specifically, strike paragraph 15-18 and 27-29 in their entirety from the
15  Second Amended Complaint.

　　　Dated:  February 2, 2010

　　　　　　　　　　　　　　　HOLMQUIST & GARDINER PLLC
　　　　　　　　　　　　　　　HAMILTON H. GARDINER

　　　　　　　　　　　　　　　PILLSBURY WINTHROP SHAW
　　　　　　　　　　　　　　　PITTMAN LLP
　　　　　　　　　　　　　　　ROBERT L. WALLAN
　　　　　　　　　　　　　　　MARIAH L. BRANDT


　　　　　　　　　　　　　　　By   /s/ Mariah L. Brandt
　　　　　　　　　　　　　　　　　　Mariah L. Brandt
　　　　　　　　　　　　　　　Attorneys for Defendants and
　　　　　　　　　　　　　　　Counterclaimants NAME INTELLIGENCE,
　　　　　　　　　　　　　　　INC. and JAY WESTERDAL and Defendants
　　　　　　　　　　　　　　　  PER WESTERDAL and RAY BERO