KENT B. GOSS (State Bar No. 131499)
kgoss@orrick.com
CHRISTOPHER J. CHAUDOIR (State Bar No. 198444)
cchaudoir@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for Plaintiffs and Counterdefendants
THOUGHT CONVERGENCE, INC. and
NAME INTELLIGENCE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOUGHT CONVERGENCE, INC., a Delaware Corporation and NAME INTELLIGENCE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JAY WESTERDAL, an individual; PER WESTERDAL, an individual; RAY BERO, an individual; CAMERON JONES, an individual; NAME INTELLIGENCE, INC., a Washington corporation; and DOTMOVIE, an unknown entity,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV 09-3088-R(AJWx)<br><br>Honorable Manuel L. Real<br><br>PLAINTIFFS THOUGHT CONVERGENCE, INC. and NAME INTELLIGENCE, LLC.'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT<br><br>Date: March 15, 2010<br>Time: 10:00 a.m.<br>Courtroom: 8 |

## I. INTRODUCTION.

Defendants Name Intelligence Inc., Jay Westerdal, Per Westerdal, and Ray Bero's (collectively, "Defendants") motion to strike evidences a fundamental misunderstanding of Plaintiff Thought Convergence, Inc.'s ("TCI") claims in the Second Amended Complaint ("SAC") and the nature and extent of the damages suffered by TCI as a result of Defendants' breach of contract, breach of the covenant of good faith and fair dealing and breach of fiduciary duties. At bottom, the allegations that Defendants seek to have stricken directly relate to each of the causes of action brought in the SAC. That is, TCI purchased Defendants' company based on an expectation that its founder, Mr. Jay Westerdal, would provide his best business efforts in growing and expanding the combined entity. Indeed, TCI expressly contracted for Mr. Westerdal's commitment to the combined company in a signed offer letter, in part to realize the rapid growth potential that Mr. Westerdal promised before and during the contract negotiations. What is more, the purchase price TCI paid for the Defendants' businesses included a premium based on Mr. Westerdal's promised devotion and commitment to the new entity, his assurance that the combined entity would achieve explosive growth and his assertion that he had a competing $60 million offer. Simply put, Mr. Westerdal defined the results of his best efforts at the time the transaction closed.

Once the company was acquired, however, Mr. Westerdal did nothing to honor his contractual obligations. To the contrary, Mr. Westerdal shirked his responsibilities to the combined entity and "checked out" from the day-to-day operation of the business. To make matters worse, Mr. Westerdal bragged to third parties that he no longer had to commit himself to the business and that he was free to come and go as he pleased. Mr. Westerdal's complete failure to honor the terms of his agreements, including his lack of commitment and devotion to the combined entity and his defiance of his fiduciary duties as a board member and founder of the new entity, resulted in a company with diminished value. Thus, a proper

calculation of the damages caused by Mr. Westerdal's breaches of the agreements must take into account the background under which the transaction was completed. Some of the best evidence to support TCI's claim is the dichotomy between what Mr. Westerdal represented the company results would be if he had actually devoted himself to the merged entity pursuant to the transaction, and what the actual results were after Mr. Westerdal decided to "take the money and run." The allegations in TCI's Second Amended Complaint do just that and are therefore integral to the background of this case and must be included in the pleadings.

### A.  STATEMENT OF FACTS

TCI is a provider of domain management, monetization, sales and development tools and technologies for internet domain owners and aggregators of domain portfolios. SAC at ¶ 4. Name Intelligence, Inc. (with Name Intelligence, LLC, and Spry.Com, together the "NIL Businesses") consisted of online tools for domain data aggregation, analysis and management, and web hosting services. SAC at ¶ 14. In late 2007, representatives from TCI's predecessor in interest approached Mr. Westerdal about the potential acquisition of the NIL Businesses.

During and as part of the negotiations to acquire the NIL Businesses, Mr. Westerdal made various statements concerning the NIL Businesses, including statements about the companies' then current profitability, its likelihood of growth in the future, and his intent to devote himself to the new company using his "full business efforts and time" to ensure the new company was able to capitalize on the combined experience of Mr. Westerdal and TCI. RFJN Ex. B (SAC) ¶ 1(b). These promises and commitments were key components of the transaction documents and the specific benefit that TCI sought under the terms of its agreements with Mr. Westerdal.

Almost immediately following the acquisition, Mr. Westerdal began shirking his responsibilities and contractual obligations to TCI. Indeed, Mr. Westerdal failed to devote any effort in the TCI businesses, much less the contracted for best

business effort. Mr. Westerdal spent less and less time doing company work, would routinely ignore his management duties and would focus only on unrelated personal endeavors. As a direct result of Mr. Westerdal's actions, the new combined entity did not experience the success for which it had contracted and was promised. The ensuing action was filed a s directly result of Mr. Westerdal's breaches.

Following a mediation held on January 6, 2010, the parties agreed to narrow the scope of their claims, and accordingly filed amended pleadings in which each party withdrew their claims for fraud. Apparently unsatisfied with the removal of the fraud claims, Defendants insisted that TCI eliminate highly relevant background allegations concerning the nature of the transaction. Although TCI explained that the allegations were a crucial component to its claim for damages under its breach theories, Defendants filed their motion to strike anyway.

## II.   ARGUMENT

### A.   TCI's Allegations Are Relevant and Should Not Be Stricken.

Motions to strike are disfavored and infrequently granted. Delano Farms Co. v. California Table Grape Com'n, 623 F.Supp.2d 1144, 1183 (E.D.Cal. 2009); *see also* Pease & Curren Refining, Inc. v. Spectrolab, Inc., 744 F.Supp. 945, 947 (C.D.Cal.1990) (denying a motion to strike allegations from pleadings when the allegations were potentially relevant to the parties' conduct) (*abrogated on other grounds by* Stanton Road Associates v. Lohrey Enters., 984 F.2d 1015 (9th Cir.1993). A motion to strike should be denied unless it can be shown that ***no evidence*** in support of the allegation would be admissible. Pease & Curren Refining, Inc., 744 F.Supp at 947 (emphasis added). "Motions to strike are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." Bureerong v. Uvawas, 922 F.Supp 1450 (C.D. Cal 1996) (citing Schwarzer, et al., Federal Civil Procedure § 9:375).

Defendants' motion does nothing to meet its burden to support striking TCI's relevant allegations. To the contrary, each of TCI's remaining allegations are directly relevant to its causes of action for breach. All of Mr. Westerdal's statements concerning the profitability of his company, his success as its president and his assurances that he would participate in the combined entity are relevant to evidence that Mr. Westerdal did not use his best efforts after the transaction closed.[1] In other words, TCI's breach of contract and breach of fiduciary duty claims rely on comparing Mr. Westerdal's pre-sale behavior and statements, along with his contractual obligations within the transaction documents, with his post-sale behavior and failure to honor his agreements. Thus, while Defendants seek to strike paragraphs 15-18 and 27-29 of the SAC in their entirety (Def.'s Motion to Strike, Docket Item No. 36 at 6-7), each allegation is directly relevant as follows:

- Paragraph 15 of the SAC addresses Mr. Westerdal's claims about his success and his intent to work for the new company. Specifically, he contracted to provide his "continued full-time 'best business efforts'" to ensure the new company's success. SAC at 3. TCI's breach of contract and breach of fiduciary duty claims are based on Mr. Westerdal's failure to use his "full business efforts and time," including his shirking of responsibilities, failure to keep regular business hours, and failure to manage employees and clients.
- Paragraph 16 of the SAC addresses Mr. Westerdal's claims about his business and his plans to continue hosting an industry conference that would provide revenue for TCI. TCI's breach of contract and breach of fiduciary duty claims are based on Mr. Westerdal's failure to repeat the profits that his businesses had allegedly previously produced. TCI

---

[1] Although Mr. Westerdal makes a vague reference to the parol evidence rule as a basis to keep these statements out, this court should decide the issue at a later date. TCI submits that the statements are consistent with the offer letter and explain what "full business efforts" means in the context of this agreement.

asserts this was due to Mr. Westerdal's dereliction and complete failure to honor his contractual commitment to the new entity. TCI entered into this agreement based upon what Mr. Westerdal presented as his best efforts and productivity, which declined precipitously after TCI purchased the NIL Businesses. In addition, Mr. Westerdal has failed to host the industry conferences as promised. These breaches resulted in damage to TCI, for which Mr. Westerdal and Defendants are now responsible.

- Paragraph 17 of the SAC addresses Mr. Westerdal's claims during negotiations that he was entertaining another offer for $60 million to purchase his businesses. Again, the allegation concerns the background under which the breach of contract, breach of the covenant of good faith and fair dealing and breach of fiduciary duties occurred. The competing offer, as presented to Mr. Westerdal, was representative of the potential future growth of his company, resulting from his contributions to a combined entity. When Mr. Westerdal ultimately breached his agreement with TCI to devote his attention to the businesses, the combined entity suffered. This allegation provides context for the damages suffered by TCI as a result of those breaches.

- Paragraph 18 of the SAC addresses the fact that TCI acquired Mr. Westerdal's business based upon his representations and his contractual agreement to contribute his best business efforts. This allegation is consistent with the transaction documents and evidences the nature and extent of TCI's contractual damages when Mr. Westerdal failed to honor the terms of his agreement.

- Paragraph 27 of the SAC addresses TCI's realization that Mr. Westerdal had abandoned his responsibilities under the Securities Exchange Agreement, including by improperly using TCI funds,

failing to obtain confidentiality agreements and third party consents, and by failing to manage the business as he promised in the Securities Exchange Agreement. Again, the paragraph evidences breaches of the agreements, which are directly relevant to TCI's claims.

- Paragraph 28 of the SAC addresses the fact that TCI purchased the NIL Businesses expecting a certain level of performance and potential, and once the Securities Exchange Agreement and offer letter were signed, that performance and potential dramatically differed from what had been presented. This is relevant to both breach of contract claims as well as the breach of fiduciary duty claim. The first breach of contract claim asserts that Mr. Westerdal failed to use his best business efforts to continue the success of the company, and the second breach of contract claim alleges that Mr. Westerdal usurped TCI business opportunities and used TCI resources to promote competing businesses. The breach of fiduciary duty claim alleges Mr. Westerdal spread false information to TCI employees and disclosed confidential information to the public, causing TCI to suffer damages. Again, the allegations are relevant to an analysis of the damages suffered.

- Paragraph 29 of the SAC addresses the gap between TCI's expectations and what the NIL businesses actually delivered. TCI asserts this gap was caused by Mr. Westerdal's failure to perform meaningful work (first breach of contract claim), his violation of various noncompetition and invention agreements (second breach of contract claim), and his attempts to appropriate TCI's business for his own personal benefit (breach of fiduciary duty claim).

Again, each of these allegations are properly in the pleadings and are relevant to establish TCI's claims and damages. They should not be stricken from TCI's Second Amended Complaint.

**B.   The Authority Cited By Defendants Does Not Support Striking TCI's Allegations.**

Defendants' case law is inapposite to the instant action. For example, Defendants rely heavily on Fantasy, Inc. v. Fogerty, 984 F.2d 1524 (9th Cir. Cal. 1993) to suggest that TCI's allegations should be stricken. The facts and procedural posture in that case, however, are drastically different than here. In Fantasy, the court granted a motion to strike only because the subject allegations did not involve the parties to that action and consisted solely of "stale and barred charges that had already been extensively litigated and would have been burdensome ... to answer." Fantasy, Inc., 984 F.2d at 1528. As discussed above, the allegations at issue in this case directly concern the parties in this action, are relevant to damage calculations and comprise the very heart of the dispute between the parties.

Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880 (9th Cir. 1983) is equally irrelevant to the instant situation. In fact, Sidney-Vinstein did not even address striking allegations from a pleading; it actually held that the lower court's granting of the motion was in error because a court cannot strike a post-judgment motion. Id. at 885-86.

Likewise, the remaining cases cited by Defendants are equally inapplicable or support denying Defendants' motion. Cal. ex rel. State Lands Comm'n v. U.S., 512 F. Supp. 36 (N.D. Cal. 1981) reiterates that motions to strike "are often looked on with disfavor because of the tendency for such motions to be asserted for dilatory purposes," Id. at 38 (citing 5 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1380 at 783 (1969), while Sears, Roebuck & Co. v. Metro Engravers, 245 F.2d 67, 70 (9th Cir. 1956) does not address a motion to strike.

**III.   CONCLUSION**

When TCI contracted with Mr. Westerdal to purchase the NIL Businesses, TCI sought the benefits of Mr. Westerdal's efforts and devotion to the combined

1  entity. Indeed, as a founder and member of the board of the new entity, Mr.
2  Westerdal had a fiduciary duty to devote his attention to the company. These were
3  the reasons TCI agreed to enter into the transaction in the first instance and the
4  reason it paid the purchases price. When Mr. Westerdal breached the agreements
5  and breached his fiduciary duties by failing to devote his attention to the company,
6  TCI suffered damages. The allegations in TCI's Second Amended Complaint
7  merely reiterate these claims. As such they are directly relevant to the instant
8  action and should not be stricken.

Dated:      February 22, 2010      KENT B. GOSS
                                   CHRISTOPHER J. CHAUDOIR
                                   ORRICK HERRINGTON & SUTCLIFFE LLP

                                   _____
                                   CHRISTOPHER J. CHAUDOIR
                                   Attorneys for Plaintiffs and Counterdefendants
                                   THOUGHT CONVERGENCE, INC. and
                                   NAME INTELLIGENCE, LLC

# PROOF OF SERVICE

I, Lupe Flores, declare:

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California 90017-5855.

I hereby certify that on February 22, 2010, I electronically filed the following documents with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties listed below:

**PLAINTIFFS THOUGHT CONVERGENCE, INC. AND NAME INTELLIGENCE, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT**

Hamilton Gardiner
hamilton@lawhg.net
Holmquist & Gardiner, PLLC
1000 Second Avenue, Suite 1770
Seattle, WA 98104
*Tel: (206) 438-9116*
*Fax: (206) 694-4601*

*Attorneys for Defendants and Counterclaimants*
***JAY WESTERDAL, and NAME INTELLIGENCE INC. and Defendant PER WESTERDAL***

Robert L. Wallan
robert.wallan@pillsburylaw.com
Mariah L. Brandt
mariah.brandt@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Tel: (213) 488-7100
Fax: (213) 629-1033

*Attorneys for Defendants and Counterclaimants*
***JAY WESTERDAL and NAME INTELLIGENCE INC. and Defendant PER WESTERDAL***

I declare under penalty of perjury that the foregoing is true and correct and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 22, 2010, at Los Angeles, California.

_____
LUPE FLORES

OHS West:260660445.1

- 1 -

## PROOF OF SERVICE

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California 90017. On February 22, 2010, I served the following document(s):

**PLAINTIFFS THOUGHT CONVERGENCE, INC. AND NAME INTELLIGENCE, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT**

[X] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

[ ] By depositing a true and correct copy of the document(s) listed above with Fed Ex in Los Angeles, California, enclosed in a sealed envelope.

[X] (by Electronic Mail), I caused such documents to be transmitted by electronic mal to the offices of the addressee.

Hamilton Gardiner
hamilton@lawhg.net
Holmquist & Gardiner, PLLC
1000 Second Avenue, Suite 1770
Seattle, WA 98104
*Tel: (206) 438-9116*
*Fax: (206) 694-4601*

*Attorneys for Defendants and Counterclaimants*
***JAY WESTERDAL, and NAME INTELLIGENCE INC. and Defendant PER WESTERDAL***

Robert L. Wallan
robert.wallan@pillsburylaw.com
Mariah L. Brandt
mariah.brandt@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Tel: (213) 488-7100
Fax: (213) 629-1033

*Attorneys for Defendants and Counterclaimants*
***JAY WESTERDAL and NAME INTELLIGENCE INC. and Defendant PER WESTERDAL***

I am employed in the county from which the mailing occurred. On the date indicated above, I placed the sealed envelope(s) for collection and mailing at this firm's office business address indicated above. I am readily familiar with this firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the firm's correspondence would be deposited with the United States Postal Service on this same date with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2010 at Los Angeles, California.

_____
LUPE FLORES
OHS West:260660445.1     - 2 -